**LAW OFFICE OF JEROLD D. FRIEDMAN**
JEROLD D. FRIEDMAN (SBN 290434)
*jerry@activistlaw.com*
17515 Spring-Cypress Rd., Suite C-360
Cypress, TX 77429
Phone: (281) 810-8812
Fax: (281) 667-3506

Attorney for Plaintiff,
DAVID McINTIRE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| DAVID McINTIRE,<br><br>   *Plaintiff,*<br><br>v.<br><br>WALGREENS HOME CARE INC., FIRST ADVANTAGE BACKGROUND SERVICES CORP. and DOES 1-10, inclusive,<br><br>   *Defendants.* | Case No.: 2:16-cv-2027<br><br>**COMPLAINT FOR DAMAGES for:**<br>**1. INVASION OF PRIVACY,**<br>**2. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY,**<br>**and 3. DECLARATORY RELIEF.**<br><br>DEMAND FOR JURY TRIAL |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

I. JURISDICTION AND VENUE

1.  The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff David McIntire (hereafter, 'Plaintiff' or 'McIntire') is a citizen and resident of the State of California, and Defendant Walgreens Home Care Inc. (hereafter, 'Walgreens') and Defendant First Advantage Background Services Corp. (hereafter, 'FABS') are corporations headquartered in different U.S. states.

2. McIntire has domiciled in California continuously since 1985 and plans to live in California indefinitely.

3. Walgreens is a corporation with its headquarters and principal place of business in the State of Illinois.

4. FABS is a corporation with its headquarters and principal place of business in the State of Florida.

5. The amount in controversy exceeds $75,000, excluding interest and costs.

## II. INTRODUCTION

6. This is an action for damages arising out of Walgreens's unlawful, random drug testing policy in violation of Art. I, Sec. 1 of the California constitution; FABS's tortious conduct at Walgreens's direction and in furtherance of Walgreens's unlawful policy; and Walgreens's wrongful termination of McIntire.

7. Walgreens subjected McIntire, its employee, to a random drug test in violation of well-established, substantial, and fundamental public policy that prohibits random drug tests of employees unless the employee performs safety-sensitive work.

8. FABS performed the drug test at the direction of Walgreens.

9. McIntire did not perform any safety-sensitive work.

10. FABS published McIntire's private drug test report to Walgreens.

11. Walgreens terminated McIntire as a result of the drug test report.

12. Walgreens published McIntire's drug test results to third-parties that have interfered with and prevented McIntire from being hired in similar employment.

13. McIntire seeks damages to remedy these egregious violations of his rights.

## III. PARTIES

14. Plaintiff David McIntire is a competent adult who resides in Los Angeles County, California. At all material times to this complaint and at the time this suit was filed, McIntire was a citizen and resident of the State of California.

15. Defendant Walgreens Home Care, Inc., is a corporation that is incorporated under the laws of the State of Illinois. Defendant's principal place of business is in the State of Illinois. Defendant may be served with process by serving its registered agent at: Corporation Service Company D/B/A CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr. #150N, Sacramento, CA 95833.

16. Defendant First Advantage Background Services Corporation is a corporation that is incorporated under the laws of the State of Florida. Defendant's principal place of business is in the State of Florida. Defendant may be served with process by serving its registered agent at: Corporation Service Company D/B/A CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr. #150N, Sacramento, CA 95833.

17. Plaintiff is unaware of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sues these defendants by such

fictitious names. Plaintiff will amend this complaint to allege their true names when ascertained.

18. Herein, Walgreens, FABS, and Does will be individually and collectively referred to as "Defendants" and/or "Defendant."

19. Plaintiff is informed and believes that each of the supervisors, managers, employees, and agents of Defendants, in doing the things alleged herein, were acting within the course and scope of their employment or agency with the Defendants.

20. Plaintiff is informed and believes that each Defendant was an agent of the other Defendants and ratified the conduct of or conspired with the other Defendants. In this regard, Plaintiff is informed and believes and on that basis alleges that, at all relevant times, each of Defendants, whether named or fictitious, was the agent or employee or each of the other Defendants, and in doing the things alleged to have been done in this complaint, acted within the scope of such agency or employment, ratified the acts of the others, or conspired with the others.

21. Plaintiff is informed and believes, and on that basis alleges that each Defendant is responsible in some manner for the violations alleged herein, and that Plaintiff's injuries were proximately caused by the conduct of such Defendant.

## IV. FACTS

22. McIntire earned his certificate as Pharmacy Technician on August 16, 2013,

issued by the State of California Board of Pharmacy (Registration #TCH 134358) for a new career in the pharmacy industry.

23. McIntire searched for work to launch his career as a certified Pharmacy Technician.

24. McIntire was hired by Walgreens on or about August 28, 2013.

25. Walgreens is the largest drug retail chain in the United States.

26. McIntire's employment was not conditioned on him taking or passing any mental or physical health test.

27. McIntire's job title and position was "shift lead."

28. As part of his normal work duties, McIntire:

   a. Answered customer questions,

   b. Received and displayed store merchandise,

   c. Sold merchandise, and

   d. Supervised 3-5 employees.

29. McIntire worked for Walgreens exclusively at its retail store #6251 at 2976 Sepulveda Blvd., Torrance, CA 90505.

30. McIntire was hired and worked as a full time, permanent employee.

31. On average, McIntire worked more than forty hours per week.

32. McIntire did not negotiate nor trade any of his privacy interests for any personal or professional benefits of working with Walgreens beyond those

normally expected between employees and employers in California.

33. Walgreens has no interest, self-evident, legitimate, important, compelling, or otherwise, in protecting the health and safety of its shift leads and similar positions above or beyond the level generally expected between employers and employees in California.

34. According to Walgreens's June 2012 "Drug-Free Workplace Policy" (hereafter, 'Policy'):

> *"Employees are expected to be in suitable mental and physical condition while at work and able to perform their jobs in a satisfactory manner. In instances where the use of alcohol or drugs interferes with these goals, appropriate action, up to and including termination of employment, will be taken."*

35. McIntire, while employed by Walgreens:

    a. Was never provided with a copy of the Policy,

    b. Was never informed about the Policy, and

    c. Never consented to the Policy.

36. At all times while McIntire worked for Walgreens, he was in:

    a. Suitable mental condition to perform work in a satisfactory manner.

    b. Suitable physical condition to perform work in a satisfactory manner.

37. Anything consumed by McIntire never interfered with Walgreens's

expectations.

38. In December 2013, McIntire was recognized as and given the store Employee of the Month award.

39. Walgreens's Employee of the Month program recognizes its staff who provide exceptional service.

40. During McIntire's employment, he received several "compliment cards" from his supervisors.

41. Walgreen's compliment cards are for customers and employees to recognize exemplary work performed by Walgreens's staff.

42. Walgreens's Policy states:

> *"Random screening may be required of all or a percentage of all employees at particular locations or in a particular job classification or department. This also includes district or area personnel on site who are working (including corporate personnel visiting or supervising in the location)."*

43. Therefore, Walgreens's Policy is not restricted to apply only to employees who perform safety-sensitive work.

44. Therefore, there may be a class of individuals who were injured by Defendants in the same way that McIntire was injured.

45. Upon arrival to work on or about April 21, 2014, McIntire was informed by

his direct supervisor, Randy Mitsuhashi (hereafter, 'Mitsuhashi'), that he was required to submit to a random drug test within twenty minutes hence.

46. McIntire informed Mitsuhashi that he might not pass the drug test.

47. Mitsuhashi told McIntire, "Don't worry too much. If you test positive, there is an opportunity for counseling instead of termination."

48. Walgreens's Policy includes a provision for rehabilitating employees who receive positive drug test results.

49. Further, the Policy coerces employees to submit to the drug test:

> *"If an employee refuses to submit to testing, management should advise the employee that a refusal to test is grounds for termination of employment."*

50. McIntire relied on his supervisor's statement to his detriment.

51. McIntire submitted to the drug test.

52. Walgreens has contracted and directed FABS to manage and conduct its "Random [Drug] Testing Policy," which is part of its Policy.

53. FABS is a global organization that specializes in employee background checks and drug screening, among other things.

54. According to FABS's web site:

> *"Our team of experts understands the requirements of your local market and culture, with a unique global technology*

*platform that is useful across all of your locations and scalable for your needs to bring you answers faster. Many of our employees have worked in the screening industry for over 25 years and have held leading positions with the National Association of Professional Background Screeners and the Drug and Alcohol Testing Industry Association."*

55. FABS knew or should have known that random drug testing in California is an unlawful invasion of privacy absent safety-sensitive work.

56. FABS had an affirmative duty not to violate California law or policy and not to violate the rights of civilians in California.

57. FABS had a fiduciary duty not to conduct medical procedures, including taking and analyzing bodily fluids, without lawful need, and a further fiduciary duty to protect and not disclose McIntire's medical information to Walgreens and any other third-party.

58. FABS drug test procedure required McIntire to:

    a. Empty his pockets,

    b. Enter a bathroom,

    c. Lower his pants,

    d. Lower his underwear,

    e. Urinate in a plastic cup,

  f. Urinate any excess in a toilet,

  g. Allow the FABS employee or agent to observe the toilet,

  h. Deliver the filled plastic cup to the FABS employee or agent,

  i. Disclose any medications he was using,

  j. Disclose his mental condition, and

  k. Disclose his physical condition.

59. Walgreens and FABS coerced McIntire to submit to FABS's drug test procedure under threat of his unemployment.

60. McIntire's test detected the presence of marijuana.

61. FABS communicated McIntire's test results to Walgreens.

62. Walgreens's Policy states:

> *"We recognize that situations may arise which are not specifically covered by these guidelines. We will deal with them on a 'case-by-case' basis, taking into account such things as the nature of the situation or problem, the employee's overall employment record and job assignment, the potential impact on safety, protection, customer service, etc."*

63. McIntire was not provided any administrative remedy such as *arguendo*:

  a. Confirm the positive result through a second test,

  b. Allow McIntire to explain the presence of marijuana in his urine, i.e.,

accidental or inadvertent consumption,

c. Rehabilitate him as Mitsuhashi offered and McIntire accepted to his own detriment, or

d. Provide any other relief as appropriate.

64. Walgreens terminated McIntire on May 5, 2014, due to FABS's reporting the presence of marijuana in his urine.

65. McIntire's loss of employment caused him:

a. Severe physical ailments, including but not limited to headaches, muscle spasms, digestive upset, erectile dysfunction,

b. Severe emotional trauma and distress, including but not limited to mental anguish, insomnia, depression, anxiety, humiliation, loss of sexual libido, and

c. Economic injury, including but not limited to lost wages and benefits including medical insurance since he was terminated.

66. McIntire's loss of employment and loss of medical insurance caused his wife severe emotional distress that in turn exacerbated McIntire's physical ailments and emotional trauma and distress.

67. McIntire's wife suffered from several medical conditions, including but not limited to pulmonary fibrosis, arthritis, irritable bowel syndrome, and high blood pressure.


68. Walgreens knew that McIntire's wife suffered from several medical conditions.

69. During extended periods since his termination, McIntire has not been able to see a psychotherapist to treat his own severe emotional trauma due to his unemployment, loss of insurance, and loss of wages.

70. McIntire's physical and emotional trauma has been exacerbated due to his inability to afford and seek treatment for his severe emotional trauma.

71. Walgreens communicated McIntire's test results to the California Department of Employment Development (hereafter, 'Department').

72. On May 21, 2014, McIntire learned from Department that Walgreens had communicated to them the results of his drug test.

73. Department determined that McIntire was eligible for unemployment insurance because Walgreens's drug test was unreasonable.

74. On November 6, 1996, the people of the State of California enacted the Compassionate Use Act of 1996 (Health and Safety Code § 11362.5) in order to allow qualified residents of California to use marijuana for medical purposes.

75. Walgreens's Policy states:

> *"The use of marijuana for medical purposes, even if permitted by state law, regulation or ordinance, will not be considered an acceptable explanation for a confirmed positive for marijuana*

*on a Company-authorized drug test and will be reported as a verified positive drug test for marijuana."*

76. Therefore, Walgreens's Policy subverts and contravenes present California and developing national law to allow qualified people to use marijuana to treat medical conditions even when such marijuana use does not affect the performance of an employee's work.

77. Walgreens's Policy:

    a. Invades the privacy of citizens of the State of California,

    b. Is not based upon Walgreens's legitimate or important interests,

    c. Does not further its stated goals or expectations,

    d. Applies to all employees of Walgreens regardless of job duties,

    e. Does not reduce any substantial or real risk of injury to employees,

    f. Interferes with the patient-doctor relationship,

    g. Unlawfully discriminates against persons with legitimate medical need to use marijuana under supervision by a physician,

    h. Is cruel by coercing persons who need the medicinal benefits of marijuana to waive their privacy interests and not to use their prescribed medication under threat of termination, and

    i. Subverts and contravenes the Compassionate Use Act of 1996.

## V. MITIGATION OF DAMAGES

78. On May 8, 2014, McIntire began looking for similar employment to the work he performed for Walgreens.

79. McIntire is informed and believes that he has not been able to be hired in similar employment due to the positive drug test now on his record.

80. McIntire continued to look for any and similar employment in order to sustain himself and his wife until her death, to sustain himself after her death, and to meet his duty to mitigate damages.

## VI. CAUSES OF ACTION

### Claim 1 — Invasion of Privacy
### (California Constitution, Art. I § 1)
### Against All Defendants, and Each of Them

81. Plaintiff hereby incorporates each allegation stated in the paragraphs above.

82. The California Constitution provides:

> *"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."*
>
> –Art. I, Sec. 1

83. Defendants' conduct constitutes an unlawful invasion of McIntire's privacy by coercing him to submit to a drug test without them having a lawful interest in

doing so.

84. The stated goal of the Policy is to guard against unsatisfactory work.

85. Said Policy does not help guard against unsatisfactory work.

86. In fact, McIntire was repeatedly commended for exemplary work.

87. McIntire was never told officially or unofficially that his work was unsatisfactory.

88. Therefore, the random drug test is capricious and has no utility.

89. Therefore, the random drug test's utility does not manifestly outweigh McIntire's privacy interests.

90. Further, Walgreens has alternative means to guard against unsatisfactory work that does not invade McIntire's privacy, including but not limited to:

    a. On the spot feedback from peers and supervisors,

    b. Periodic work performance reviews, and,

    c. "Reasonable suspicion" drug testing, as provided in the Policy.

91. Defendants further invaded McIntire's privacy by sharing his private drug test results among themselves and with other parties without McIntire's voluntary and informed consent.

92. As a result of Defendants', and each of their invasions of McIntire's privacy, McIntire suffers and continues to suffer damages in the form of lost wages and other employment benefits, medical expenses, mental anguish, and severe

emotional and physical distress, and has suffered irreparable injury to his constitutional rights, the exact amount of which will be proven at trial.

93. Defendants, and each of them, acted for the purpose of causing McIntire to suffer financial loss and severe emotional distress and physical distress and are therefore guilty of oppression, fraud, and malice, as defined in California Civil Code § 3294, justifying an award of exemplary and punitive damages.

WHEREFORE, McIntire requests relief as hereinafter provided.

### Claim 2 — Wrongful Termination in Violation of Public Policy Against All Defendants, and Each of Them

94. Plaintiff hereby incorporates each allegation stated in the paragraphs above.

95. McIntire's employment was terminated in violation of well-established, substantial, and fundamental public policies of the State of California.

96. The State of California policy that limits random drug testing is set forth in a series of cases. *See, Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1 (1994), *Loder v. City of Glendale,* 14 Cal.4th 846 (1997), *Smith v. Fresno Irrigation District,* 72 Cal.App.4th 147 (1999).

97. The same State of California policy also prohibits any invasion of a person's privacy. California Constitution, Art. I, Sec. 1.

98. McIntire's termination was wrongful and in violation of these well-established, substantial and fundamental public policies of the State of California.

99. Defendants, and each of their termination in wrongful violation of well-established, substantial and fundamental public policies of the State of California and other public policies caused McIntire to suffer damages, loss, and harm.

100. As a result of Defendants', and each of their wrongful termination of McIntire, Plaintiff has suffered and continues to suffer damages, in the form of lost wages and other employment benefits, medical expenses, mental anguish, and severe emotional and physical distress, the exact amount of which will be proven at trial.

101. As a proximate result of Defendants', and each of their conduct, McIntire has suffered and continues to suffer embarrassment, anxiety, humiliation, and other emotional distress, as well as medical expenses, all to his damage in an amount according to proof.

102. Defendants, and each of them, acted for the purpose of casing McIntire to suffer financial loss and severe emotional distress and physical distress, and are guilty of oppression and malice, justifying an award of exemplary and punitive damages. Cal. Civ. Code § 3294(a).

103. McIntire has also incurred attorney's fees.

104. McIntire claims such amount as damages together with pre-judgment interest pursuant to Cal. Civil Code § 3287 and/or any other provision of law providing for pre-judgment interest.

WHEREFORE, McIntire requests relief as hereinafter provided.

### Claim 3 — Declaratory Relief
### (Cal. Code Civ. Proc. § 1060)
### Against Walgreens

105. Plaintiff hereby incorporates each allegation stated in the paragraphs above.

106. A judicial declaration is necessary and appropriate at this time under the circumstances in order that McIntire may ascertain that Walgreens's Policy is unlawful in the State of California.

107. McIntire has suffered financial, emotional, and physical damages as a result of Walgreens's Policy.

WHEREFORE, McIntire requests relief as hereinafter provided.

## VI. REQUEST FOR RELIEF

McIntire requests relief against Defendants on all Causes of Action as follows:

  a. For economic damages, including but not limited to medical expenses, lost wages, lost employee benefits, bonuses, lost retirement benefits, vacation benefits, back pay, and front pay;

  b. For noneconomic damages, including but not limited to compensation for mental anguish, and emotional and physical distress;

  c. For exemplary and punitive damages according to proof;

d. For prejudgment and post-judgment interest at the prevailing legal rate;

e. Declaratory relief that Walgreens's Policy is unlawful, null, and void in the State of California (Cal. Code Civ. Proc. § 1060 et seq.);

f. For reasonable attorney's fees;

g. For costs of suit; and,

h. For such other and further relief as the court may deem proper.

## VII. DEMAND FOR JURY TRIAL

108. Plaintiff hereby demands a jury trial on all issues so triable.

DATED: March 21, 2016                         Respectfully submitted,

*/s/ Jerold D. Friedman*
Jerold D. Friedman
Attorney for Plaintiff,
DAVID McINTIRE